IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Career Counseling, Inc. | ) | |
| d/b/a Snelling Staffing Services, a | ) | Civil Action No.: 3:15-cv-05061-JMC |
| South Carolina Corporation, individually | ) | |
| and as the representative of a class of | ) | |
| similarly-situated persons, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Amsterdam Printing & Litho, Inc., | ) | |
| Taylor Corporation, John Does 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Career Counseling, Inc. ("Plaintiff"), brings an action on behalf of itself and all others similarly situated, as a result of receiving "unsolicited facsimiles"[1] from Defendants Amsterdam Printing & Litho, Inc. ("Amsterdam") and Taylor Corporation ("Taylor") (collectively "Defendants"), in violation of the Telephone Consumer Protection Act, Pub. L. No. 102-243, 105 Stat. 2394 (codified at 47 U.S.C. § 227) ("TCPA"). (ECF No. 1 at 1-2 ¶¶ 1-2.) Before the court is Defendants' Second Motion for Summary Judgment (ECF No. 116). For the reasons stated herein, the court **DENIES** Defendants' Second Motion for Summary Judgment (ECF No. 116).

## I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

In its Complaint, Plaintiff alleges that Defendants sent at least two (2) "unsolicited facsimile advertisements" ("fax advertisements") between June 2015 and December 2015, which

---

[1] The term "unsolicited advertisement" is defined as any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise. 47 U.S.C. § 227(a)(5).

violated the TCPA. (ECF No. 1 at 1-2 ¶ 2, 4 ¶ 12.)[2] Plaintiff alleges that the fax advertisements are unsolicited because "[it] had not invited or given permission to Defendants to send the fax[es]." (*Id.* at 4 ¶ 14.) Plaintiff seeks relief expressly authorized by the Junk Fax Protection Act of 2005, Pub. L. No. 109-21, 119 Stat. 359 (codified at 47 U.S.C. § 227(b)(1)(C)) ("JFPA"), which amended the TCPA. (*Id.* at 2-3 ¶ 5.) Plaintiff seeks "(1) injunctive relief enjoining Defendants, their employees, agents, representatives, contractors, affiliates, and all other persons and entities acting in concert with them, from sending unsolicited advertisements in violation of the JFPA; and (2) an award of statutory damages in the minimum amount of $500 for each violation of the JFPA, and to have such damages trebled, as provided by § 227(b)(3) of the TCPA." (*Id.*)

Defendants move for summary judgment on the basis that Amsterdam only sent Plaintiff "solicited" fax advertisements with Plaintiff's prior express invitation or permission.[3] (ECF No. 116-1 at 7, 16-18.) Alternatively, even if Amsterdam sent "unsolicited" fax advertisements to Plaintiff, it had an established business relationship ("EBR") with Plaintiff because Plaintiff purchased goods from Amsterdam twice. (*Id.* at 18-22.) Moreover, Amsterdam's faxes contained compliant opt-out notices. (*Id.*) Lastly, Defendants move the court to grant summary judgment and to dismiss Taylor from this case because Taylor cannot be held liable for fax advertisements sent by Amsterdam. (*Id.* at 22-31.)

On December 28, 2015, Plaintiff filed its Complaint. (ECF No. 1.) On March 23, 2016, the case was reassigned to the undersigned. (ECF No. 23.) On May 16, 2017, Defendants filed a

---

[2] Plaintiff asserts in later briefing that Defendants sent it at least twenty-seven (27) fax advertisements. (ECF No. 120 at 3.)

[3] In Defendants' original Motion for Summary Judgment (ECF No. 69), Defendants challenged Plaintiff's standing to bring this cause of action. (ECF No. 69-1 at 2.) However, in Defendants' Second Motion for Summary Judgment (ECF No. 116), Defendants do not make any argument regarding Plaintiff's standing.

Motion for Summary Judgment. (ECF No. 69.) On June 23, 2017, Plaintiff responded (ECF No. 81), and on June 30, 2017, Defendant replied (ECF No. 85). On August 23, 2017, the court granted the Parties' Consent Motion for Leave to Supplement Defendants' Motion for Summary Judgment and Opposition to Plaintiff's Motion for Class Certification (ECF No. 88).[4] (ECF No. 89.) The same day, Defendants filed a Supplemental Response to Defendants' Motion for Summary Judgment and Opposition to Plaintiff's Motion for Class Certification (ECF No. 91), to which Plaintiff replied (ECF No. 93.)[5]

On November 2, 2017, a hearing was scheduled in regard to Plaintiff's Motion for Class Certification (ECF No. 68) and Defendants' Motion for Summary Judgment (ECF No. 69). (ECF No. 96.) On November 16, 2017, the court granted Defendants' Second Unopposed Motion for Leave to Supplement Defendants' Motion for Summary Judgment and Opposition to Plaintiff's Motion for Class Certification (ECF No. 99). (ECF No. 100.) The same day, Defendants filed a Second Supplemental Response to Defendants' Motion for Summary Judgment and Opposition to Plaintiff's Motion for Class Certification (ECF No. 102), to which Plaintiff replied (ECF No. 103.)

On November 27, 2017, Plaintiff filed an Unopposed Motion for Leave to File Response to Defendants' Second Supplement to Defendants' Motion for Summary Judgment and Opposition to Plaintiff's Motion for Class Certification. (ECF No. 104.) On November 28, 2017, the court granted this Motion (ECF No. 105), and Plaintiff filed its Response (ECF No. 106). On December 1, 2017, there was a hearing regarding Plaintiff's Motion for Class Certification (ECF No. 68) and Defendants' Motion for Summary Judgment (ECF No. 69). (ECF No. 109.)

---

[4] On May 12, 2017, Plaintiff filed a Motion for Class Certification. (ECF No. 68.)

[5] The court notes that Defendants filed the same document in support of their Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Class Certification. (ECF Nos. 91, 92). In the same manner, Plaintiff filed the same document in response/reply. (ECF Nos. 93, 94.)

On March 27, 2018, Defendants filed a Third Motion for Leave to Supplement Defendants' Motion for Summary Judgment and Opposition to Plaintiff's Motion for Class Certification. (ECF No. 112.) On the same day, the court granted Defendants' Motion (ECF No. 112), and due to the complexity and amount of supplemental information filed by the parties, the court also denied without prejudice Plaintiff's Motion for Class Certification (ECF No. 68) and Defendants' Motion for Summary Judgment (ECF No. 69). (ECF No. 113.) The court directed the parties to refile their respective motions and to consolidate any supplemental caselaw or arguments in the parties' respective memorandums of law within fourteen (14) days of the court filing its Order. (*Id.*) On April 10, 2018, Defendant filed its Second Motion for Summary Judgment. (ECF No. 116.) On April 24, 2018, Plaintiff responded to Defendants' Motion (ECF No. 116). (ECF No. 120.)

## II.     JURISDICTION

The court has jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff brings its claim pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(C). (*See* ECF No. 1 at 3 ¶ 6.)

## III.     LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[6] A fact is "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248–49 (1986). A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the non-moving party. *Id.* at 248.

---

[6] "Fed. R. Civ. P." will hereinafter be denoted as "Rule."

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990) (citing *Pignons S.A. De Mecanique v. Polaroid Corp.*, 657 F.2d 482, 486 (1st Cir. 1981)). The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 324 (1986); *Anderson*, 477 U.S. at 252. All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249 (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253 (1968)). "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995). "[T]he burden [to show no genuine issue of material fact] on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325.

A party cannot create a disputed issue of material fact simply by contradicting [his or] her own testimony. *See Halperin v. Abacus Technology Corp.,* 128 F.3d 191, 198 (4th Cir. 1997) ("[i]t is well established that 'a genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of [a party's] testimony is correct.'") (quoting *Barwick v. Celotex Corp.,* 736 F.2d 946, 960 (4th Cir. 1984)), *holding on other grounds limited by Baird v. Rose,* 192 F.3d 462 (4th Cir. 1999); *Johnson v. Bryant*, No. CA 0:11-537-JFA-PJG, 2012 WL 2935254, at *2 (D.S.C. July 19, 2012) (same).

# IV. ANALYSIS

## I. Telephone Consumer Protection Act

"Voluminous consumer complaints about abuses of telephone technology—for example, computerized calls dispatched to private homes—prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370-71 (2012). "Congress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls. The Act bans certain practices invasive of privacy and directs the Federal Communications Commission ("FCC or Commission") to prescribe implementing regulations." *Id.*

The JFPA's amendment to the TCPA had three purposes:

(1) Create a limited statutory exception to the current prohibition against the faxing of unsolicited advertisements to individuals without their "prior express invitation or permission" by permitting such transmission by senders of commercial faxes to those with whom they have an established business relationship (EBR).

(2) Require that senders of faxes with unsolicited advertisements (i.e., "junk faxes") provide notice of a recipient's ability to opt out of receiving any future faxes containing unsolicited advertisements and a cost-free mechanism for recipients to opt out pursuant to that notice.

(3) Require the Federal Communications Commission [ ] and Comptroller General of the United States to provide certain reports to Congress regarding the enforcement of these provisions.

S. Rep. No. 109-76, at 1 (2005).

At issue in this case is (1) whether Plaintiff gave Defendants prior invitation or permission to send it faxes, (2) whether the parties had an EBR, (3) whether there were compliant opt-out notices on Defendants' faxes, and (4) whether Taylor is a "sender" under the TCPA.

To prevail on a TCPA claim pursuant to 47 U.S.C. § 227(b)(1)(C) (the receipt of unsolicited fax advertisements), a plaintiff must establish that "(1) the defendant used a telephone facsimile

machine, a computer, or other device to send one or more faxes to the plaintiffs facsimile machine [defendant was a sender][7]; (2) the faxes sent were "advertisements"; and (3) the plaintiff did not give prior express invitation or permission for defendant to send the faxes." *Brodsky v. HumanaDental Ins. Co.*, No. 10 C 3233, 2014 WL 2780089, at *6 (N.D. Ill. June 12, 2014), *opinion modified on denial of reconsideration*, No. 10 C 3233, 2014 WL 4813147 (N.D. Ill. Sept. 29, 2014) (citation omitted).

It is undisputed that Amsterdam sent Plaintiff at least two faxes (ECF No. 116-1 at 4; ECF No. 120 at 3),[8] and it is undisputed that the faxes sent were advertisements (ECF No. 116-1 at 4; ECF No. 120 at 3). The disputed issue is whether Plaintiff gave Defendants prior express invitation or permission to send Plaintiffs the faxes at issue.

## II.    Prior Express Invitation or Permission

"Prior express invitation or permission may be given by oral or written means, including electronic methods." *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005*, 71 Fed. Reg. 25,967, 25,972 (2006) ("2006 FCC Rule").[9] "Express permission need only be secured once from the consumer in order to send [faxes] to that recipient until the consumer revokes such permission by sending an opt-out request

---

[7] "The term sender . . . means the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(f)(10).

[8] Defendants dispute whether Taylor Corporation is liable under the TCPA because it allegedly did not send any of the fax advertisements at issue. (ECF No. 116-1 at 22-31.)

[9] In a 2003 Order, the FCC stated that "[e]xpress permission to receive a faxed ad requires that the consumer understand that by providing a fax number, he or she is agreeing to receive faxed advertisements." *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14129–30 (2003) ("2003 FCC Order").

to the sender." *Id.* Defendants have the burden of proving that Plaintiff gave prior express invitation or permission by clear and convincing evidence.[10] *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Junk Fax Prevention Act of 2005*, 21 F.C.C. Rcd. 3787, 3807 (2006) ("2006 FCC Order"). "Senders who choose to obtain permission orally are expected to take reasonable steps to ensure that such permission can be verified. In the event a complaint is filed, the burden of proof rests on the sender to demonstrate that permission was given." 2006 FCC Order, 21 F.C.C. Rcd. at 3812.[11] If the recipient of a fax advertisement gave the sender prior express invitation or permission, then the recipient cannot claim that the advertisement was "unsolicited" as defined by the TCPA. *See* 47 U.S.C. § 227(a)(5).

        i.    Plaintiff's Arguments

Plaintiff disputes that it gave Defendants permission to send it faxes, and seeks to prove that "Defendants cannot demonstrate the absence of a genuine issue of material fact that they obtained Plaintiff's 'prior express invitation or permission' to send Plaintiff fax advertisements." (ECF No. 120 at 1, 19-26.) Plaintiff directs the court to its account profile (ECF No. 85-1 at 2) which demonstrates that it did not give Defendants prior express invitation or permission, and also directs the court to Defendants' conflicting employee testimony (ECF No. 81-1 at 17:7-23; ECF No. 120 at 7-8 (p. 60:25-62:4)) regarding the interpretation of Plaintiff's account profile. (ECF No. 120 at 5-6.)

---

[10] A party giving prior express invitation or permission is different than a party giving consent. *See Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.,* No. 12 C 3233, 2017 WL 2391751, at *4 (N.D. Ill. June 2, 2017) (finding that "consent" and "express permission" are two separate concepts and that "[t]here is no avenue for inferring or implying permission or invitation based on circumstances or conduct.").

[11] (*See* ECF No. 120 at 21 (compiling cases addressing Defendants' burden of proof).)

ii.    <u>Defendants' Arguments</u>

Defendants contend that Plaintiff solicited each of the faxes because Plaintiff made previous purchases from Amsterdam in 2005 and 2015; and in making those purchases, "[Plaintiff] voluntarily provided its fax number and gave prior express invitation and permission to receive fax advertisements."  (ECF No. 116-1 at 16.)  Defendants direct the court to Plaintiff's admission that Virginia McCuen ("McCuen"), a retired employee and Plaintiff's part owner, voluntarily gave Amsterdam Plaintiff's fax number among other contact information, and did not opt-out of receiving further faxes while completing Plaintiff's June 12, 2015 purchase.  (ECF No. 69-3 at 3 (Request Nos. 3, 5, 8); ECF No. 116-1 at 3-5.)[12]  Defendants assert that "[a]s indicated by [Plaintiff's] customer account file, [Plaintiff] agreed to receive future fax advertisements"; and there is "[no] evidence to suggest that a customer service representative erroneously failed to flag [Plaintiff's] account after it objected to receive faxes."  (ECF No. 116-1 at 17.)

iii.    <u>The Court's Review</u>

There is a genuine dispute as to the material fact of whether Plaintiff gave Defendants its prior express invitation or permission to be sent fax advertisements.

Plaintiff admitted that McCuen did not "request to opt-out of receiving future facsimiles from Amsterdam [while making a purchase on June 12, 2015]."  (ECF No. 69-3 at 3 (Request No. 8).)  Defendants would have the court infer that Plaintiff's admission that McCuen did not opt-out of receiving future faxes, indicates that McCuen opted-in to receiving future faxes.  However, the

---

[12] Plaintiff was asked to "[a]dmit that Virginia McCuen did not request to opt-out of receiving future facsimiles from Amsterdam during the purchase[,]" and Plaintiff admitted this fact.  (ECF No. 69-3 at 3 (Request No. 8).)

fact that McCuen did not opt-out of receiving future faxes, does not mean that she took an affirmative action to opt in to receiving future faxes.[13]

Amsterdam asserts that it requires all of its customer service representatives to obtain permission to send fax advertisements to customers through the recitation of a prewritten script. (ECF No. 116-1 at 3-4.) When a customer calls Amsterdam to order a product, customer service representatives read the script, and as part of the script they first ask for the customer's fax number and email address, and if the customer provides his or her number and email address then the representative can ask for permission to send "special offers" to the customer in the future.[14] (*Id.* at 3.) The customer has the opportunity to accept or to decline the offer to receive future special offers, and the customer service representative marks the customer's choice in his or her account profile (also known as the Customer Information Display Form). (*Id.* at 16-17.) Plaintiff's account is marked with an "N" next to the word "fax." (ECF No. 85-1 at 2.)

On Amsterdam's Customer Information Display Form, there are flags next to different modes of communication which denote whether Amsterdam can use that mode of communication to contact a customer. (ECF No. 81-1 at 17:7-23; ECF No. 85-1 at 2.) On October 26, 2016, Jason Moreau ("Moreau"), Amsterdam's Director of e-commerce, testified that a "Y" next to a mode of

_____

[13]An "affirmative act" occurs when a party takes an action. *See, e.g., Grooms v. Office of Pers. Mgmt.*, 154 F.3d 181, 185 (4th Cir. 1998)(the filing of a standard waiver form is a sufficiently affirmative act of waiver for the cancellation of insurance coverage); *Felty v. Graves-Humphreys Co.,* 785 F.2d 516, 520 (4th Cir. 1986) (the affirmative act of enforcing a right); *Sierra Club v. Larson*, 882 F.2d 128, 131 (4th Cir. 1989) (affirmative act of  agency approval); *Davis v. Richmond, Fredericksburg & Potomac R. Co.*, 803 F.2d 1322, 1326 (4th Cir. 1986) (affirmative act of discrimination).

[14]After receiving the customer's fax number and e-mail address, the customer service representative then states "[b]y providing your fax & email address, you qualify to receive exclusive offers and new product introductions.  Would you like to receive these special offers?" (ECF No. 116-1 at 3-4.)

communication means "yes," and an "N" means "no." (ECF No. 120-2 at 7-8 (pp. 60:25-61:1).) Moreau testified that "N" next to the word "fax" indicates that Amsterdam can send faxes to a party, because the flags are "do not" or "opt-out" flags, meaning that a "yes" answer (marked with a "Y") denotes that a customer opted-out of receiving advertisements via that mode of communication. (ECF No. 120-2 at 7-8 (pp. 61:17-62:4)). Moreau also testified that David Wachowiak ("Wachowiak") could provide insight as to how customer service representatives input information into the computer, and whether a party gave permission to be sent faxes. (*Id.* at 10 (pp. 105:7-106:25); ECF No. 120 at 4.)

On February 28, 2017, Defendants' Rule 30(b)(6) witness Wachowiak testified, in regard to Plaintiff's Customer Information Display Form, that "if the flag was marked yes [or with a "Y"], that meant the customer agreed to receive advertisements by fax." (ECF No. 81-1 at 17:7-23.) On April 6, 2018, Defendants filed a Declaration by Wachowiak declaring that he misspoke about the meaning of the flags located on the Customer Information Display Form during his February 28, 2017 deposition. (ECF No. 116-3 at 2-5.) Wachowiak declares that an "N" next to the word "fax" indicates that a person has not opted out of receiving faxes. (ECF No. 116-3 at 3 ¶ 9.) Wachowiak also declares that on October 26, 2016, he provided deposition testimony in this case and testified that an "N" next to the word fax indicates that "the customer has not opted out of receiving faxes[.]" (*Id.* at 1-2 ¶ 4.)

Moreau's testimony and Wachowiak's testimony at his February 28, 2017 30(b)(6) deposition are contradictory, thereby, creating a genuine dispute as to how to interpret a customer's response on the Customer Information Display Form and further as to whether Plaintiff actually gave prior express permission or invitation to Defendants. However, it seems that Defendants

attempted to eliminate this dispute by providing Wachowiak's April 6, 2018 Declaration (ECF No. 116-3 at 2-5) and October 26, 2016 deposition testimony (ECF No. 116-3 at 7:1-6).[15]

Plaintiff asserts that Wachowiak's Declaration (ECF No. 116-3 at 2-5) is subject to the sham affidavit doctrine. *See Cooper v. Smithfield Packing Co., Inc.,* No. 7:13-CV-00145-F, 2016 WL 7031555, at *6 (E.D.N.C. Dec. 1, 2016) ("[t]he 'sham affidavit doctrine' provides that the court, when considering a motion for summary judgment, may disregard an affidavit contradicting the affiant's prior testimony if it appears the affidavit was filed in an attempt to manufacture an issue of fact."). Wachowiak's Declaration opposes his February 28, 2017 deposition testimony (ECF No. 81-1 at 17:7-23) and supports his October 26, 2016 deposition testimony (116-3 at 7:1-6). The court notes that Defendants did not provide Wachowiak's deposition until over a year later and did not provide evidence of Wachowiak's October 26, 2016 deposition in support of its original Motion for Summary Judgment (ECF No. 69). Defendants' attempt to cure the dispute as to what "N" and "Y" mean by filing Wachowiak's October 26, 2016 deposition testimony (ECF No. 116-3 at 7) and April 6, 2018 Declaration (ECF No. 116-3 at 2-5) does not cure the contradictions between the testimony of Wachowiak and Moreau. Instead, the contradictory testimony adds more confusion as to the true meaning of "N" and "Y" and thus must be resolved by the trier of fact.

---

[15] Defendants also offer a Declaration by Moreau which states "[d]uring one or both of [Plaintiff's] purchases, [Plaintiff] voluntarily provided its fax number and gave prior express permission to receive fax advertisements." (ECF No. 69-6 at 3 ¶ 7.) In its original Response (ECF No. 81) to Defendants' original Motion for Summary Judgment (ECF No. 69), Plaintiff asserted that Moreau's affidavit should be subject to the sham affidavit doctrine. Plaintiff does not raise this assertion in its second response (ECF No. 120). However, even if Plaintiff did assert that the sham affidavit doctrine should apply, the court would not need to determine the sham affidavit doctrine's applicability because Moreau's Declaration (ECF No. 69-6) does not cure the contradictions between Moreau's testimony and Wachowiak's testimony and thereby creates a genuine dispute as to a material fact.

Wachowiak's Declaration contradicts his February 28, 2017 deposition pursuant to Rule 30(b)(6) and thus is subject to the sham affidavit doctrine. (ECF Nos. 116-3 at 2-5, 7.) For this reason, the court disregards Wachowiak's Declaration (ECF No. 116-3 at 2-5). *See Cooper*, 2016 WL 7031555, at *6.

Defendants have failed to carry their burden of proof in establishing that Plaintiff gave Amsterdam a prior express invitation or prior express permission to send faxes. Defendants provided Plaintiff's Customer Information Display Form which undisputedly shows an "N" next to the word "Fax." Defendants then provided conflicting testimony regarding the meaning of "N" from two different witnesses, Wachowiak and Moreau. (ECF No. 81-1 at 17:7-23; ECF No. 81-2 at 7 (p. 61:1).) Defendants cannot arbitrarily choose what deposition testimony the court should consider.[16] Wachowiak, as the Rule 30(b)(6) witness for Defendants and Wachowiak's answers bind Defendants.[17]

---

[16] By providing a Rule 30(b)(6) witness, Amsterdam had an affirmative duty to ensure that Wachowiak had knowledge of all information on the noticed topics. *See, e.g, Daubert v. NRA Grp., LLC,* 189 F. Supp. 3d 442, 459 (M.D. Pa. 2016)*, reconsideration denied,* No. 3:15-CV-00718, 2016 WL 3916294 (M.D. Pa. July 20, 2016)*, rev'd and remanded,* 861 F.3d 382 (3d Cir. 2017)*, and aff'd,* 861 F.3d 382 (3d Cir. 2017) ("Defendant's argument that [a witness] was more knowledgeable . . . than [the rule 30(b)(6) witness] was, and that her affidavit should therefore take precedence over the 30(b)(6) deposition testimony, is not a "satisfactory explanation [for the differences between the affidavit and testimony]." Rather, it flies in the face of Rule 30(b)(6).")

[17] "Rule 30(b)(6) of the Federal Rules of Civil Procedure pertains to depositions of organizations, including corporate entities. The organization is permitted to designate a person to testify on its behalf, and the organization is bound by that testimony." *Covol Fuels No. 4, LLC v. Pinnacle Min. Co., LLC*, 785 F.3d 104, 113 n.13 (4th Cir. 2015); *see also Ethox Chem., LLC v. Coca-Cola Co.,* No. 6:12-CV-01682-TMC, 2014 WL 2719214, at *2 (D.S.C. June 16, 2014) ("It follows that, in order to comply with the rule, the corporation has an affirmative duty to ensure that its designee has knowledge of all information on the noticed topics reasonably available to the corporation and is prepared to provide complete, binding answers on that information."). A party's Rule 30(b)(6) witness's testimony only binds the party pretrial. *See Eclipse Packaging, Inc. v. Stewarts of Am., Inc.,* No. 16-1888, 2018 WL 1736986, at *2 (4th Cir. Apr. 10, 2018) ("[T]here is no rule in this circuit that a witness is bound by his initial deposition testimony.") (Unpublished Opinion).

Defendants assert that Ms. McCuen did not opt out of receiving further facsimiles while ordering products from Amsterdam, but as stated above, "not opting-out" is not the same as "opting-in." Additionally, Wachowiak testified that Amsterdam does not have any documents showing that Plaintiff gave permission to receive advertisements by fax, and was not aware of any documents that show that any of the parties receiving the faxes at issue gave permission to Amsterdam to send faxes to the parties. (ECF No. 81-1 at 21:23-22:13.)

Plaintiff does not have the burden to prove that it did not give permission, it is Defendants' burden to show that Plaintiff did give permission. The court must draw all reasonable inferences in favor of Plaintiff as the non-moving party, and in doing so the court finds that there is a genuine dispute as to the material fact of whether Plaintiff gave Defendants prior express invitation or permission to send fax advertisements.[18]

### III.    <u>Established Business Relationship Exception</u>

Even if Plaintiff received unsolicited faxes from Defendants, the TCPA has an exception for senders who have an EBR with the recipient. *See* 47 U.S.C. § 227(b)(1)(C)(i). An EBR is

---

[18] The court notes that the parties place a great deal of weight as to whether *Bais Yaakov of Spring Valley, et al. v. FCC, et al.*, 852 F.3d 1078, 1080 (D.C. Cir. 2017) applies. *Bais Yaakov* was a multi-district litigation case in which the D.C. Circuit held that the FCC overstepped its Congressional authority, and that "solicited" faxes (faxes sent with prior express invitation or permission) are not required to have an opt-out notice. *Id.* at 1083; *see also A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.,* No. 16 C 2513, 2018 WL 488257, at *2 (N.D. Ill. Jan. 18, 2018) ("D.C. Circuit ruled on thirteen consolidated petitions for review originally filed in multiple courts of appeals seeking to set aside the FCC's Solicited Fax Rule.") Because there is a genuine dispute as to the material fact of whether Plaintiff gave Defendants prior express invitation or permission, the court does not need to address whether this case applies in the Fourth Circuit. *See E & G, Inc. v. Mount Vernon Mills, Inc.,* No. 6:17-CV-00318-AMQ, 2018 WL 2932357, at *4 (D.S.C. June 12, 2018) ("Because [Defendant] has failed to show it is entitled to summary judgment as a matter of law on the issue of 'express invitation or permission' necessary to establish that the subject fax was solicited under the TCPA, . . . the Court need not address whether the opt-out rule is required in express consent situations, or the applicability of the D.C. Circuit's holding in Bais Yaakov[.]").

defined as, "a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a business or residential subscriber with or without an exchange of consideration, on the basis of an inquiry, application, purchase or transaction by the business or residential subscriber regarding products or services offered by such person or entity, which relationship has not been previously terminated by either party."  47 C.F.R. § 64.1200(f)(6).  The FCC has the right to place a limit on the duration of an EBR,[19] but it has not done so in the context of unsolicited faxes.[20]

The EBR exception is also known as the "safe harbor" exception, and a sender is within the statutory safe harbor and can send unsolicited faxes to a party if it (1) has an established business relationship with the recipient as defined by the statute, (2) has obtained the fax recipient's fax number by the recipient voluntarily giving it to either the sender or voluntarily giving it to a third party knowing that it will be publicly distributed, and (3) the unsolicited advertisement contains a compliant opt-out notice.  47 U.S.C. § 227(b)(1)(C).[21]

A compliant opt-out notice includes several components, including the requirement that the notice must contain language that states that the "failure to comply, within the shortest reasonable time, as determined by the [Federal Communications] Commission, . . . is unlawful."

---

[19] *See* 47 U.S.C. § 227(b)(2)(G) (stating that the FCC, subject to some limitations, may limit the duration of the existence of an EBR).

[20] *Compare* 47 C.F.R. § 64.1200(f)(5) (an EBR in the context of telephone solicitations limits the duration of an EBR to eighteen (18) months following a purchase or transaction and three (3) months after an application or inquiry) *with* 47 C.F.R. § 64.1200(f)(6) (no time limit for an EBR in the context of unsolicited faxes.)

[21] *See also Drug Reform Coordination Network, Inc. v. Grey House Publ'g, Inc.*, 106 F. Supp. 3d 9, 15–16 (D.D.C. 2015) (citing requirements for the EBR exception).

47 U.S.C. § 227 (b)(2)(D)(ii). The FCC has determined that the shortest reasonable time is thirty (30) days.[22] 47 C.F.R. § 64.1200(a)(4)(iii)(B).

    i.    <u>Plaintiff's Argument</u>

Plaintiff maintains that regardless of whether it has an EBR with Amsterdam, Amsterdam's opt-out notice does not comply with FCC regulations, therefore, that defense is not available. (ECF No. 120 at 26-29.) Plaintiff also maintains that the FCC has ruled that full compliance with the regulations regarding opt-out notices is required. (*Id.* at 28.)

    ii.    <u>Defendants' Argument</u>

Defendants posit that Amsterdam has an EBR with Plaintiff and the faxes it sent included an opt-out notice, therefore, even if the faxes were unsolicited Plaintiff cannot establish that Defendants violated the TCPA. (ECF No. 116-1 at 18-22.) Defendants admit that Amsterdam did not include reference to the "[thirty] (30)-day compliance period to honor an opt-out request," but Plaintiff was not damaged by this factor because Plaintiff never contacted Amsterdam to request the faxes to stop. (*Id.* at 20.) Defendants also posit that the opt-out notice substantially complied with TCPA requirements and that the absence of some technical language should not result in liability. (*Id.* at 21-22.)

---

[22] A notice contained in an advertisement complies with the requirements under this paragraph only if—

    A.  The notice states that the recipient may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine or machines and that failure to comply, within 30 days, with such a request meeting the requirements under paragraph (a)(4)(v) of this section is unlawful[.]

47 C.F.R. § 64.1200(a)(4)(iii)

iii.     The Court's Review

It is undisputed that Plaintiff and Amsterdam have an EBR, evidenced by Plaintiff's Customer Information Display Form (ECF No. 85-1 at 2), and Plaintiff's admission that it made a purchase from Amsterdam (ECF No. 69-3 at 2 (Request No. 3)).  Plaintiff also admits that Plaintiff voluntarily provided Amsterdam with its fax number when Virginia McCuen made a purchase on June 12, 2015.  (ECF No. 69-3 at 3 (Request No. 5).)  The ultimate dispute as to the applicability of the EBR defense is whether the opt-out notice on the faxes is statutorily compliant.

In 2014, the FCC made a ruling that "full compliance" with the TCPA's statutory opt-out provisions was required for the opt-out provisions included in both solicited and unsolicited faxes. *Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 29 F.C.C. Rcd. 13998, 14013 ¶ 33 (2014) (hereinafter "2014 FCC Order").  *Bais Yaakov of Spring Valley, et al. v. FCC, et al.* vacated this Order's requirement that solicited faxes have an opt-out notice, but the requirement for unsolicited faxes to have a compliant opt-out notice still remains.

Whether a party has fully complied with the statutory opt-out provisions can be a question of fact or law, depending on which particular element is absent or in dispute.  *See Davies v. W.W. Grainger, Inc.,* No. 13-CV-03546, 2016 WL 6833902, at *4 (N.D. Ill. Nov. 21, 2016) ("It is this Court's position that the question of whether the opt-out notice is clear and conspicuous is a mixed question of law and fact."); *Drug Reform Coordination Network*, 106 F. Supp. 3d at 16 ("[The opt-out notice] did not state, however, that [the defendant] must honor an opt-out within 30 days and that the failure to do so would be unlawful. Accordingly, even if [the defendant] could demonstrate that it had an 'existing business relationship' with [the plaintiff], its noncompliance with the

TCPA's strict notice requirements disqualifies it from the safe harbor.").[23]  In *Brodsky*, the United States District Court for the Northern District of Illinois, Eastern Division held that the defendant's admission that it failed to include language that "[its] failure to respond to an opt-out request within [thirty] (30) days is unlawful," provided evidence that the required opt-out notices on the faxes were insufficient as a matter of law.  2014 WL 2780089, at *9.[24]

The *Brodsky* court's holdings are not precedential in this court, however, the court finds its analysis regarding Defendants' admission persuasive.  In this case, Defendants admit that Amsterdam's opt-out notice did not state that "failure to comply within thirty (30) days of the request is unlawful." (ECF No. 69-1 at 14.)  Therefore, Defendants have admitted that the faxes' opt-out notices are insufficient as a matter of law.  Because of this admission, the court does not need to inquire further into the propriety of the EBR exception for unsolicited faxes because the exception would not be applicable in this case.[25]

---

[23] *See also Craftwood II, Inc. v. Wurth Louis & Co.*, No. SACV170606DOCKES, 2017 WL 4286605, at *5 (C.D. Cal. Sept. 20, 2017) ("While the Court does not now determine [at the motion to dismiss stage of litigation] as a matter of law whether the opt-out notices in these faxes meet the requirements of the TCPA safe harbor provision, the Court notes some potential insufficiencies."). *But see, C-Mart, Inc. v. Metro. Life Ins. Co.,* No. 13-80561-CIV, 2014 WL 12300313, at *5 (S.D. Fla. July 14, 2014) ("[T]he [c]ourt opts not to establish that the fax's opt-out was defective as a matter of law, and the issue should be determined at trial.").

[24] The court also held that the defendant's admission would be binding on them should the case go to trial.  *Brodsky*, 2014 WL 2780089, at *9.

[25] Defendants also assert that Plaintiff never contacted Amsterdam to request the faxes to stop. (ECF No. 116-1 at 20.)  This is a failure to mitigate argument and the court does not need to make a finding on this issue because it pertains to damages which is a separate issue than whether the EBR exception applies in this case.  *See Ahmed*, 2017 WL 5720548 ("Generally, failure to mitigate may reduce a plaintiff's amount of damages, but it is not a bar to recovery."); *see also Fogg v. Gonzales,* 492 F.3d 447, 458 (D.C. Cir. 2007) ("An affirmative defense *will defeat the plaintiff's* claim if it is accepted by the district court or the jury.") (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1270 (3d ed. 2007)) (emphasis in original); *Hartford Fire Ins. Co. v. Annapolis Bay Charters*, 69 F. Supp. 2d 756 (D. Md. 1999).

## IV.    **Taylor Corporation's Liability**

The unsolicited fax provisions of the TCPA only apply to "senders" of faxes, and the parties dispute whether Taylor, Amsterdam's parent company (ECF No. 81-1 at 24:3-5; ECF No. 120 at 8), is liable as a sender under the provisions of the TCPA. "The term sender for purposes of [the sending of unsolicited faxes]. . . means the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(f)(10).   "[FCC] rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 10 F.C.C. Rcd. 12391, 12397 (1995).

### i.    Plaintiff's Arguments

Plaintiff asserts that "record evidence demonstrates that Taylor was the financial beneficiary of the fax advertising and is a "sender" under the TCPA."  (ECF No. 120 at 30-31.) Plaintiff directs the court to Wachowiak's testimony that Amsterdam consulted Taylor regarding "the need for opt out language on fax advertisements several years ago," and that "[Amsterdam's] profits are Taylor's profits."  (*Id.* at 31, 33); (*see also* ECF No. 81-1 at 20:20-21:19, 24:6-10.) Plaintiff also asserts that the court should apply the plain meaning of "sender" because "if the language of a statute or regulation has a plain and ordinary meaning, courts need look no further and should apply the regulation as it is written." *Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, 883 F.3d 459, 467 (4th Cir. 2018) (quoting *Gilbert v. Residential Funding LLC*, 678 F.3d 271, 276 (4th Cir. 2012)); (*see also* ECF No. 120 at 32).

## ii.    Defendants' Argument

Defendants maintain that Taylor "does not approve" any marketing strategies with Amsterdam, nor does it have a "marketing agreement" with Amsterdam, or have "knowledge or involvement" in what is sent by Amsterdam; stating that "[t]he alleged unsolicited faxes were sent by, and for the benefit of Amsterdam." (ECF No. 116-1 at 24.)  Defendants also maintain that Taylor is not a "sender nor a seller,"[26] therefore, Defendants are entitled to summary judgment. (*Id.* at 25.)  Defendants ultimately maintain that "[Plaintiff's] fail[ure] to allege facts or provide any evidence showing that Taylor physically sent the faxes or that someone sent the faxes on its behalf [is fatal to Plaintiff's claim]."  (*Id.* at 25.)[27]

## iii.   The Court's Review

The court notes that several of Defendants' assertions regard the sufficiency of Plaintiff's allegations, however, at the summary judgment stage of litigation Plaintiff cannot rely on its pleadings, but must put forth "specific" facts demonstrating that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(c)(1).  Therefore, Defendants' assertions regarding the sufficiency of Plaintiff's pleadings are a nullity. [28]  Additionally, Defendants have the burden to show that there is no genuine issue as to any material fact for trial, by demonstrating that there

---

[26] The JFPA concerns the "sending" of faxes not "selling" a product, therefore, Defendants' arguments as to whether Taylor is a "seller" are inapposite.

[27] Defendants also assert that Plaintiff impermissibly "lump" Taylor and Amsterdam together and that Plaintiff did not allege any facts against Taylor.  (ECF No. 116-1 at 25-27.)  Moreover, Defendants assert that Plaintiff fails to allege that Taylor cloaked Amsterdam with "apparent authority" as to the content and control of the fax advertisements.  (*Id.* at 30.)

[28] Defendants' argument regarding Plaintiff "lumping" Amsterdam and Taylor together or alleging any facts against Taylor focus on the sufficiency of Plaintiff's pleadings which Plaintiff cannot rely on at this stage of litigation.

is a lack of evidence to support Plaintiff's case.  *Celotex*, 477 U.S. at 322.  The court finds that Plaintiff has set forth specific facts demonstrating a genuine issue of fact as to whether Taylor is a sender and therefore potentially liable under the TCPA.

Wachowiak testified that Taylor shares in the profits of Amsterdam and Taylor approved the use of the "opt-out" language placed on the faxes.  (ECF No. 81-1 at 24:6-10; 26:19-27:21.)[29] As Plaintiff asserts, the faxes were "indisputably sent" on behalf of Amsterdam (ECF No. 120 at 3), but Wachowiak's testimony that Taylor not only shared in Amsterdam's profits but also approved the opt-out language on the faxes presents a genuine dispute as to the material fact of whether the faxes were also sent on Taylor's behalf, utilizing the TCPA definition of "sender." Drawing all reasonable inferences in favor of Plaintiff, the court denies Defendants' Motion for Summary Judgment as to Taylor Corporation.

## V.    CONCLUSION

For the reasons stated above, Defendants' Second Motion for Summary Judgment (ECF No. 116) is **DENIED.**

**IT IS SO ORDERED.**

J. Michelle Childs

United States District Judge

June 19, 2018
Columbia, South Carolina

---

[29] Wachowiak testified that "[Amsterdam's] profits are Taylor's profits" (ECF No. 81-1 at 24:6-10) and that "[Taylor] would have provided opt-out language or at least approved if [Amsterdam] submitted something to make sure it was compliant [in regard to sending advertisements by fax]." (*Id.* at 26:19-27:2).  In response to a question about Amsterdam's submission of its documents to Taylor for approval, Wachowiak further states that "we would have submitted the opt-out language [for approval]."  (*Id.* at 27:3-8.)