IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Career Counseling, Inc.<br>d/b/a Snelling Staffing Services, a<br>South Carolina Corporation, individually<br>and as the representative of a class of<br>similarly-situated persons,<br><br>　　　　　Plaintiff,<br>　　v.<br><br>Amsterdam Printing & Litho, Inc.,<br>Taylor Corporation, John Does 1-10,<br><br>　　　　　Defendants. | Civil Action No.: 3:15-cv-05061-JMC<br><br><br><br><br><br><br>**ORDER AND OPINION** |

Plaintiff brings an action on behalf of itself and all others similarly situated, as a result of Defendants Amsterdam Printing & Litho, Inc. ("Amsterdam") and Taylor Corporation ("Taylor") (collectively "Defendants") sending Plaintiff and the putative class "unsolicited fax advertisements"[1], in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. (ECF No. 1 at 1-2 ¶¶ 1-2.) Before the court is Plaintiff's Amended Motion for Class Certification (ECF No. 117). For the reasons stated herein, the court **DENIES WITHOUT PREJUDICE** Plaintiff's Amended Motion for Class Certification (ECF No. 117).

---

[1] The term "unsolicited advertisement" is defined as any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise. 47 U.S.C. § 227(a)(5).

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that Defendants sent Plaintiff at least two (2) unsolicited fax advertisements between June 2015 and December 2015, which violated the TCPA.[2] (ECF No. 1 at 1-2 ¶ 2, 4 ¶ 12.) Plaintiff seeks to certify a class, pursuant to Fed. R. Civ. P. 23(b)(3),[3] based on Amsterdam's transmission of twenty-one (21) faxes to Plaintiff and the proposed class between June 2015 and December 2015. (ECF No. 117-1 at 2.) Plaintiff alleges the fax advertisements were unsolicited because "[it] had not invited or given permission to Defendants to send the fax[es]." (ECF No. 1 at 4 ¶ 14.) Plaintiff seeks relief expressly authorized by the Junk Fax Protection Act of 2005, Pub. L. No. 109-21, 119 Stat. 359 (codified at 47 U.S.C. § 227) ("JFPA"), which amended the TCPA. (*Id.* at 2-3 ¶ 5.) More specifically, Plaintiff seeks "(1) injunctive relief enjoining Defendants, their employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with them, from sending unsolicited advertisements in violation of the JFPA; and (2) an award of statutory damages in the minimum amount of $500 for each violation of the JFPA, and to have such damages trebled, as provided by § 227(b)(3) of the TCPA." (*Id.*)

Plaintiff asserts that Defendants successfully sen[t] 252,549 fax advertisements through fax broadcaster WestFax, Inc. (ECF No. 117-1 at 1-2.) Plaintiff also asserts that "Amsterdam can identify through its corporate records the targets to whom the [twenty-one] faxes were successfully sent [that are the subject of this motion]." (*Id.* at 10.) Because Amsterdam is able to ascertain the persons or entities targeted by the faxes, Plaintiff asserts that a class is ascertainable. (*Id.* at 3.)

---

[2] Plaintiff ultimately alleges that it received twenty-seven (27) faxes in total, but only brings this action as to twenty-one (21) of the faxes because six (6) faxes were allegedly sent by Amsterdam in preparation for this action. (ECF No. 116-1 at 4 n.1; ECF No. 120 at 3.)

[3] "Fed. R. Civ. P." will hereinafter be denoted as "Rule."

On December 28, 2015, Plaintiff filed its Complaint. (ECF No. 1.) On January 4, 2016, Plaintiff filed a Motion to Certify a Class (ECF No. 6). Judge Cameron McGowan Currie stayed all briefing on Plaintiff's Motion until after the initial scheduling conference. (ECF No. 7.) Defendants filed a response to Plaintiff's Motion on March 17, 2016. (ECF No. 21.) On March 23, 2016, the case was reassigned to the undersigned. (ECF No. 23.) On June 29, 2016, the court held a hearing (ECF No. 47) on Plaintiff's Motion to Certify a Class (ECF No. 6), and on July 12, 2016, the court denied Plaintiff's Motion without prejudice and with leave to refile. (ECF No. 48.)[4]

On May 12, 2017, Plaintiff refiled its Motion for Class Certification. (ECF No. 68.) On June 8, 2017, Defendants responded (ECF No. 75), and on June 30, 2017, Plaintiff replied (ECF No. 85). On August 23, 2017, the court granted the Parties' Consent Motion for Leave to Supplement Defendants' Motion for Summary Judgment and Opposition to Plaintiff's Motion for Class Certification (ECF No. 88). (ECF No. 89.) The same day, Defendants filed a Supplemental Response to Defendants' Motion for Summary Judgment and Opposition to Plaintiff's Motion for Class Certification (ECF No. 91), to which Plaintiff replied (ECF No. 93.)[5]

On November 2, 2017, a hearing was scheduled for December 1, 2017, in regard to Plaintiff's Motion for Class Certification (ECF No. 68) and Defendants' Motion for Summary Judgment (ECF No. 69).[6] (ECF No. 96.) On November 16, 2017, the court granted Defendants' Second Unopposed Motion for Leave to Supplement Defendants' Motion for Summary Judgment

---

[4] Plaintiff's Motion was filed as a "placeholder" motion in order to avoid the "unnecessary gamesmanship" surrounding "pick-off" attempts. (ECF No. 48 at 1.)

[5] The court notes that Defendants filed the same document in support of their Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Class Certification. (ECF Nos. 91, 92). In the same manner, Plaintiff filed the same document in response/reply. (ECF Nos. 93, 94.)

[6] Defendants filed their Motion for Summary Judgment (ECF No. 69) on May 16, 2017.

and Opposition to Plaintiff's Motion for Class Certification (ECF No. 99). (ECF No. 100.) The same day, Defendants filed a Second Supplemental Response to Defendants' Motion for Summary Judgment and Opposition to Plaintiff's Motion for Class Certification (ECF No. 102), to which Plaintiff replied (ECF No. 103.)

On November 27, 2017, Plaintiff filed an Unopposed Motion for Leave to File Response to Defendants' Second Supplement to Defendants' Motion for Summary Judgment and Opposition to Plaintiff's Motion for Class Certification. (ECF No. 104.) On November 28, 2017, the court granted this Motion (ECF No. 105), and Plaintiff filed its Response (ECF No. 106). On December 1, 2017, the court held a hearing on Plaintiff's Motion for Class Certification (ECF No. 68) and Defendants' Motion for Summary Judgment (ECF No. 69). (ECF No. 109.)

On March 27, 2018, Defendants filed a Third Motion for Leave to Supplement Defendants' Motion for Summary Judgment and Opposition to Plaintiff's Motion for Class Certification. (ECF No. 112.) On the same day, the court granted Defendants' Motion (ECF No. 112), and due to the complexity and amount of supplemental information filed by the parties, the court also denied without prejudice Plaintiff's Motion for Class Certification (ECF No. 68) and Defendants' Motion for Summary Judgment (ECF No. 69). (ECF No. 113.) The court directed the parties to refile their respective motions and to consolidate any supplemental caselaw or arguments in the parties' respective memorandums of law within fourteen (14) days of the court filing its Order. (*Id.*) On April 10, 2018, Plaintiff filed its Amended Motion for Class Certification (ECF No. 117). On April 24, 2018, Defendants responded. (ECF No. 119.)

## II. JURISDICTION

The court has jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff brings its claim pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(C). (*See* ECF No. 1 at 3 ¶ 6).

## III. LEGAL STANDARD

The United States Court of Appeals for the Fourth Circuit has held that a class cannot be certified if the class members are not identifiable or ascertainable, stating ". . . Rule 23 contains an implicit threshold requirement that the members of a proposed class be 'readily identifiable.'" *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (quoting *Hammond v. Powell*, 462 F.2d 1053, 1055 (4th Cir. 1972)); *see also Solo v. Bausch & Lomb Inc.*, No. 2:06-CV-02716-DCN, 2009 WL 4287706, at *4 (D.S.C. Sept. 25, 2009) ("[A]s a preliminary matter, the court must consider the definition of the class when determining the appropriateness of class certification.") (citing *Kirkman v. North Carolina R. Co.*, 220 F.R.D. 49, 53 (M.D.N.C. 2004)).

In addition to demonstrating ascertainability, the party seeking class certification bears the burden of demonstrating that it meets the requirements of Rule 23. *See, e.g., Romig v. Pella Corporation*, 2016 WL 3125472, at *3 (D.S.C. June 3, 2016). Rule 23(a) provides that certification is only proper if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

Once these prerequisites are met, the proposed class must still satisfy one of three additional requirements for certification under Rule 23(b). *See EQT Prod. Co.*, 764 F.3d at 357 (quoting *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 423 (4th Cir. 2003)). Plaintiff seeks

certification under Rule 23(b)(3); therefore, Plaintiff must show that "questions of law or fact common to class members *predominate* over any questions affecting only individual members, and that a class action is superior to other available methods of fairly and efficiently adjudicating the controversy." (emphasis added). "The predominance requirement is similar to but "more stringent" than the commonality requirement of Rule 23(a). *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006) (quoting *Lienhart v. Dryvit Sys.*, 255 F.3d 138, 146 n.4 (4th Cir. 2001)).

A party must produce enough evidence to demonstrate that class certification is in fact warranted. *See Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). If one of the requirements necessary for class certification is not met, Plaintiff's efforts to certify a class must fail. *See Clark v. Experian Information Solutions, Inc.*, 2001 WL 1946329, at *4 (D.S.C. March 19, 2001) (citing *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 205 (7th Cir. 1993)).

The court must go beyond the pleadings, taking a "close look" at relevant matters, conducting "a rigorous analysis of such matters," and making "findings" that the requirements of Rule 23 have been satisfied. *See Gariety v. Grant Thornton, LLP,* 368 F.3d 356, 365 (4th Cir. 2004) (citations omitted).[7] While the court should not "include consideration of whether the proposed class is likely to prevail ultimately on the merits, *id.* at 366 (citing *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 177-78 (1974)), "sometimes it may be necessary for the district court to probe behind the pleadings before coming to rest on the certification question." *Id.* (*citing Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982)).

---

[7] *See also Dukes,* 564 U.S. at 350-51 ("[C]ertification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.") (internal citations omitted).

## IV.   ANALYSIS

I.   Telephone Consumer Protection Act

"Voluminous consumer complaints about abuses of telephone technology—for example, computerized calls dispatched to private home—prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370-71 (2012). "Congress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls. The TCPA bans certain practices invasive of privacy and directs the Federal Communications Commission ("FCC") to prescribe implementing regulations." *Id.*

The JFPA's amendment to the TCPA had three purposes, one of which was addressed above:

> (1) Create a limited statutory exception to the current prohibition against the faxing of unsolicited advertisements to individuals without their "prior express invitation or permission" by permitting such transmission by senders of commercial faxes to those with whom they have an established business relationship (EBR).[8]
>
> (2) Require that senders of faxes with unsolicited advertisements (i.e., "junk faxes") provide notice of a recipient's ability to opt out of receiving any future faxes containing unsolicited advertisements and a cost-free mechanism for recipients to opt out pursuant to that notice.
>
> (3) Require the Federal Communications Commission (FCC) and Comptroller General of the United States to provide certain reports to Congress regarding the enforcement of these provisions.

---

[8] An EBR is defined as, "a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a business or residential subscriber with or without an exchange of consideration, on the basis of an inquiry, application, purchase or transaction by the business or residential subscriber regarding products or services offered by such person or entity, which relationship has not been previously terminated by either party." 47 C.F.R. § 64.1200(f)(6).

S. Rep. No. 109-76, at 1 (2005).

To prevail on a TCPA claim pursuant to 47 U.S.C. § 227(b)(1)(C), a plaintiff must establish that "(1) the defendant used a telephone facsimile machine, a computer, or other device to send one or more faxes to the plaintiffs facsimile machine [defendant was a sender][9]; (2) the faxes sent were "advertisements"; and (3) the plaintiff did not give prior express invitation or permission for defendant to send the faxes."[10] *Brodsky v. HumanaDental Ins. Co.*, No. 10 C 3233, 2014 WL 2780089, at *6 (N.D. Ill. June 12, 2014), *opinion modified on denial of reconsideration*, No. 10 C 3233, 2014 WL 4813147 (N.D. Ill. Sept. 29, 2014) (citation omitted). "The TCPA prohibits sending an unsolicited fax advertisement to a recipient. . . . [T]he recipient is the person or entity that [receives] the fax." *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 997 (8th Cir. 2016) (citing 47 U.S.C. § 227(b)(1),(3)).[11]

II. Standing

Defendants challenge whether Plaintiff's proposed class can be certified because some class members may have provided Amsterdam with prior express invitation or permission to send

---

[9] "The term sender . . . means the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(f)(10).

[10] The first two elements are undisputed as to Amsterdam. (ECF No. 116-1 at 4; ECF No. 120 at 3.) However, there is a disputed question of fact as to whether Taylor is a "sender" for purposes of the TCPA. This issue was addressed by the court in its denial of Defendants' Second Motion for Summary Judgment (ECF No. 116). (ECF No. 123.) Additionally, there is a disputed question of fact as to whether Plaintiff gave Defendants prior express invitation or permission to send Plaintiff faxes, and this disputed question is addressed by the court in its denial of Defendants' Second Motion for Summary Judgment (ECF No. 116). (ECF No. 123.)

[11] *But cf. Bridgeview Health Care Ctr. Ltd. v. Clark*, No. 09-CV-05601, 2011 WL 4585028, at *3 (N.D. Ill. Sept. 30, 2011) ("Persuasive authority within the Seventh Circuit holds that given the plain reading and statutory intent of the TCPA, a violation of the TCPA simply requires that an unsolicited fax be sent, not that Plaintiff must prove that it was received.").

8

faxes to those class members, thus these class members suffered no Article III injury. (ECF No. 119 at 13.) Therefore, the court must address standing because whether a party has standing is "the threshold question in every federal case, determining the power of the court to entertain the suit," without standing the case may not move forward. *Warth v. Seldin*, 422 U.S. 490, 498 (1975); *see also AtlantiGas Corp. v. Columbia Gas Transmission Corp.*, 210 F. App'x 244, 247 (4th Cir. 2006) ("[a] court does not have subject matter jurisdiction over an individual [or party] who does not have standing.").

"The party attempting to invoke federal jurisdiction bears the burden of establishing standing." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006) (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)). "The standing doctrine has both constitutional and prudential components." *Bishop v. Bartlett*, 575 F.3d 419, 423 (4th Cir. 2009) (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014)). "When the case is a class action lawsuit, the named class representatives 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'" *Pashby v. Delia*, 709 F.3d 307, 316 (4th Cir. 2013) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1001 n.13 (1982)); *see also Dreher v. Experian Info. Sols., Inc.,* 856 F.3d 337, 343 (4th Cir. 2017) ("In a class action matter, 'we analyze standing based on the allegations of personal injury made by the named plaintiff. Without a sufficient allegation of harm to the named plaintiff in particular, he cannot meet his burden of establishing standing.'") (quoting *Beck v. McDonald*, 848 F.3d 262, 269–70 (4th Cir. 2017)).

In order to demonstrate constitutional standing under federal law, Plaintiff, as the class representative, must establish that it suffered or faced an imminent "(1) injury in fact (2) that is

fairly traceable to the defendant's conduct and (3) that is likely to be redressed by a favorable decision." *See Retail Indus. Leaders Assoc. v. Fielder*, 475 F.3d 180, 186 n.1 (4th Cir. 2007) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

For an injury to be cognizable under current standing doctrine, Plaintiff's injury in fact must be "concrete and particularized, and actual or imminent, not conjectural or hypothetical." *White Tail Park v. Stroube*, 413 F.3d 451, 458 (4th Cir. 2005) (quoting *Lujan*, 504 U.S. at 560-61). Congress may also, "elevat[e] to the status of legally cognizable injuries, *de facto* injuries that were previously inadequate in law."[12] *Lujan*, 504 U.S. at 578. However, Plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016).

In regard to the prudential component of standing, "[s]tanding doctrine embraces several judicially self-imposed limits on the exercise of federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Allen*, 468 U.S. at 751; *see also Bishop*, 575 F.3d at 423; *Lexmark*, 134 S. Ct. at 1387. The dispute at issue in this case only concerns whether the proposed class members' claims are within the "zone of interests" of the TCPA.[13] (ECF No. 119 at 15.) The central question as to prudential standing in

---

[12] *See also Warth*, 422 U.S. at 514 ("Congress may create a statutory right or entitlement[,] the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of statute.") ((citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n. 3 (1973)).

[13] *See also Lexmark,* 134 S. Ct. at 1387 ("Whether a plaintiff comes within the 'zone of interests' is an issue that requires [the Supreme Court] to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim.").

this case is whether Plaintiff falls into the class of Plaintiffs whom Congress has authorized to sue under 47 U.S.C. § 227.

   i.   *Plaintiff's Constitutional Standing*

Courts have recognized that the receipt of unsolicited faxes can be a concrete injury because the faxes waste the recipient's toner and paper, its time, and the fax occupies the recipient's fax machine.[14] Plaintiff has provided evidence that Amsterdam sent Plaintiff at least two faxes which Plaintiff received (ECF No. 1-1), and also provided Plaintiff's President Elizabeth Trenbeath's deposition testimony regarding how much Plaintiff pays for its fax machine, its cost of paper, and the time its employees take to read and determine the subject matter of each fax received (ECF No. 117-10 at 7-8 (pp. 18-23)). Ms. Trenbeath testified that each month Plaintiff pays $376 a month to lease its fax machine (*id.* at 7 (20:4-12)), pays anywhere from $28-$54 a box for paper (*id.* (20:13-21)), and pays $77 for a maintenance plan that includes printer toner as needed (*id.* at 8 (21:3-6)). Ms. Trenbeath also testified that each time Plaintiff receives a fax an employee has to review it to determine its subject matter, and that it only takes a "few seconds" to review

---

[14] *Wendell H. Stone Co., Inc. v. Chesapeake Plywood, LLC*, No. CV MJG-16-2821, 2017 WL 1550242, at *2 (D. Md. May 1, 2017) ("[t]he United States Court of Appeals for the Fourth Circuit has not addressed [whether plaintiff has standing] in the context of a TCPA fax claim. However, in *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 639 (4th Cir. 2005), the Fourth Circuit decided—for insurance coverage purposes—that a claim against an insured for sending a fax in violation of the TCPA was [not] a covered claim for 'property damage.' The *Resource* court stated that the receipt of a fax "occasions the very property damage the TCPA was written to address: depletion of the recipient's time, toner, and paper, and occupation of the fax machine and phone line." *Id*. [Therefore, Plaintiff has standing]."); *see also Florence Endocrine Clinic, PLLC v. Arriva Med.*, *LLC,* 858 F.3d 1362, 1366 (11th Cir. 2017) ("[b]ecause the clinic's fax machine was occupied and rendered unavailable for legitimate business while processing the unsolicited fax, the clinic established that it suffered a concrete injury"); *Horton v. Sw. Med. Consulting, LLC*, No. 17-CV-0266-CVE-MJX, 2017 WL 2951922, at *3 n.3 (N.D. Okla. July 10, 2017) (listing cases that have found plaintiffs to have standing in post-*Spokeo* TCPA fax cases).

the fax, but that two to three people might handle a particular fax. (*Id.* at 8 (22:19-23:3).)[15] Further, Ms. Trenbeath also testified that the receipt of faxes was an "invasion of [her] business."[16] (*Id.* at 8 (23:4-12).)

Plaintiff's receipt of Amsterdam's faxes impeded its time because it required at least one employee to determine the nature of the fax, and to the extent that a fax was a junk fax, it depleted Plaintiff's resources in terms of paper and toner, and occupied Plaintiff's fax machine. The impediment to Plaintiff's time, the depletion of Plaintiff's resources, and the occupancy of Plaintiff's fax machine, constitutes an injury-in-fact for purposes of the TCPA. *See, e.g., Wendell*, 2017 WL 1550242, at *2; *Resource Bankshares Corp.*, 407 F.3d at 639; *Florence Endocrine Clinic*, 858 F.3d at 1366. It is undisputed that Amsterdam sent faxes to Plaintiff (ECF No. 116-1 at 4 n.1; ECF No. 120 at 3) which caused injury, and this court is able to redress this injury under the TCPA, 47 U.S.C. § 227(b)(3). Therefore, Plaintiff has established constitutional standing.

   ii.   *Plaintiff's Prudential Standing*

There is a dispute as to whether Plaintiff gave Amsterdam prior express invitation or permission to send faxes to Plaintiff, and also a dispute as to whether the opt-out notices on Amsterdam's faxes are compliant with the TCPA. The resolution of these disputes will affect the outcome of the case and whether Plaintiff has stated a valid claim given the intent of the TCPA. However, the court has the discretion to refrain from addressing prudential standing and utilizes that discretion in this case. *See United States v. Day*, 700 F.3d 713, 721 (4th Cir. 2012) ("Unlike

---

[15] Ms. Trenbeath also testified that there was a "cubbyhole" for each type of incoming fax based on its content (i.e. payroll, collections, junk faxes, etc.) and she reviews them monthly. (ECF No. 117-10 at 7 (19:11-25).)

[16] Ms. Trenbeath's testimony was in response to the question: "Have you ever been injured by the inbound faxes [not referencing any particular faxes]?" (ECF No. 117-10 at 8 (23:4-5)).

Article III standing, issues of prudential standing are non-jurisdictional and may be "pretermitted in favor of a straightforward disposition on the merits.") (quoting *Finstuen v. Crutcher*, 496 F.3d 1139, 1147 (10th Cir. 2007)); *see also Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 642–43 (2002) ("It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the court's statutory or constitutional power to adjudicate the case.") (citing *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 89 (1998)).

## III. Class Ascertainability

Pursuant to *EQT Production Co.*, the court must determine if a class is ascertainable, and must be able to readily identify the class members of the proposed class in reference to objective criteria. 764 F.3d at 358; *see also Solo*, 2009 WL 4287706, at *4.

"If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *EQT Production Co.*, 764 F.3d at 358 (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012)). However, "[Plaintiff] need not be able to identify every class member at the time of certification." *Id.* The court finds that the class Plaintiff seeks to certify is not ascertainable.

Plaintiff's class is defined as "[a]ll persons or entities who were successfully sent one or more [of the twenty-one (21) faxes at issue in this case, sent in alleged violation of the TCPA]". (ECF No. 117-1 at 2.) To determine the prospective class members, Plaintiff proposes an administrative system in which the "coupon code" or "family code" on each fax advertisement can be cross-referenced with an "exception report" in order to establish which parties were successfully sent the fax advertisement. (*Id.* at 9-10); (*see also* ECF No. 117-5 at 42:5-8, 45:18-23; ECF No. 117-9 at 8 (79:3-6).) The exception reports are reports that accompany a "job summary report"

13

(statistics regarding the batch of faxes sent including those transmissions that failed as well as the total number of fax numbers that were removed[17] from transmission), and provide a list of fax numbers for which the fax transmission failed and a list of those fax numbers that were removed. (ECF No. 117-1 at 9); (*see also* ECF No. 117-5 at 44:17-45:15; ECF No. 117-11 at 5 (16:16-17)).

Plaintiff has not provided evidence of the unique set of fax numbers to which Amsterdam successfully sent faxes.[18] As currently configured, in order to determine which parties were successfully sent a fax, the court would have to cross-reference the complete list of numbers to which the fax was sent (the target fax list) with the exception report. (*See* ECF No. 117-5 at 45:18-23.) The exception report includes the numbers to which the fax was unsuccessfully sent and the numbers that were removed. (*See id.* at 44:17-45:15) This cross-referencing process would force the court to look at each number individually to ensure that it was not included in the "failed" or "removed" category.

The United States Court of Appeals for the Sixth Circuit has found that, "[i]n the context of the TCPA where fax logs have existed listing each successful recipient by fax number, our circuit has concluded that such a 'record in fact demonstrates that the fax numbers are objective data satisfying the ascertainability requirement.'" *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 471 (6th Cir. 2017), *as corrected on denial of reh'g en banc* (Sept. 1, 2017), *cert. denied*, 138 S. Ct. 1284 (2018) (quoting *Am. Copper & Brass, Inc. v. Lake City*

---

[17] The "removed" section of the Job Summary Report "contains numbers in removal lists and can contain invalid numbers and duplicate numbers." (*See, e.g.,* ECF No. 117-4 at 2.)

[18] *See CE Design Ltd. v. Cy's Crabhouse N., Inc.*, 259 F.R.D. 135, 141-42 (N.D. Ill. 2009) ("The fax numbers on the logs present enough information to enable class counsel to locate the class members. . . . Plaintiff has provided circumstantial proof of receipt by all of the numbers to which the fax logs indicate faxes were successfully sent on behalf of [Defendant]. That is sufficient to satisfy the preponderance of the evidence standard, assuming that is the standard that applies as defendants contend.") (internal citations omitted).

*Indus. Prods., Inc.*, 757 F.3d 540, 545 (6th Cir. 2014)).[19] Other courts have also held that fax logs establishing which fax numbers were successfully sent a fax at issue in the case was enough to establish predominance.[20] *See Holtzman v. Turza,* No. 08 C 2014, 2009 WL 3334909, at *5 (N.D. Ill. Oct. 14, 2009) ("Plaintiff has proffered the fax transmission logs documenting the contacts to whom MessageVision successfully sent the fax. These logs are sufficient to at least circumstantially prove that 8,630 faxes were successfully transmitted to 221 individual numbers who thus received the [subject] fax.").

"Where the practical issue of identifying class members is overly problematic, the court should consider that the administrative burdens of certification may outweigh the efficiencies expected in a class action." *Cuming v. S.C. Lottery Comm'n*, 2008 WL 906705, at *1 (D.S.C. March 31, 2008) (citing *Sanneman v. Chrysler Corp.*, 191 F.R.D. 441, 445 (E.D. Pa. 2000)). The court finds that the class cannot be ascertained because without the unique set of fax numbers described above the court would have to take each individual number on the target fax list for a specific fax and then cross-reference the target fax list with the exception report for that specific

---

[19] *See also Sandusky Wellness Ctr., LLC*, 821 F.3d at 997 (The Eighth Circuit found the proposed class to be ascertainable because Plaintiff provided fax logs which included the fax numbers that received the faxes sent by Defendant); *Am. Copper & Brass, Inc.*, 757 F.3d at 545 ("[Plaintiff's] expert witness[ ] analyzed B2B's fax records in his report. Based on those records, [the expert] opined that "a total of 10,627 successful transmissions of a complete fax were successfully sent to and received by 10,627 unique fax numbers [which provides objective data satisfying the ascertainability requirement].")

[20] *See Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 359 (3d Cir. 2013) ("[The Third Circuit] ha[s] previously noted that the line dividing ascertainability from predominance is blurry. But despite some overlap, they remain separate prerequisites to class certification and serve distinct purposes: the ascertainability requirement focuses on whether individuals fitting the class definition may be identified without resort to mini-trials, whereas the predominance requirement focuses on whether essential elements of the class's claims can be proven at trial with common, as opposed to individualized, evidence.") (internal citations omitted).

fax. The court finds that requiring it to cross-reference a target fax list with an exception report for each fax creates an undue burden on the court's ability to ascertain the proposed class. Therefore, Plaintiff has not carried its burden of establishing that the class is ascertainable. *See EQT Production Co.*, 764 F.3d at 358. Because the court finds that Plaintiff's proposed class is not ascertainable, the court makes no finding as to whether Plaintiff has established the Rule 23 prerequisites for class certification or whether *Bais Yaakov of Spring Valley v. Federal Communications Commission*, 852 F.3d 1078 (D.C. Cir. 2017) is precedential in the Fourth Circuit. Therefore, the court must deny Plaintiff's Amended Motion for Class Certification (ECF No. 117).

## IV. CONCLUSION

For the reasons stated above, the court **DENIES WITHOUT PREJUDICE** Plaintiff's Amended Motion for Class Certification (ECF No. 117).

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

July 3, 2018
Columbia, South Carolina